**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHRISTINE BLANTZ,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS AND REHABILITATION,<br>Division of Correctional Health Care<br>Services; JAMES RUDDY,<br>individually and in his official<br>capacity as medical auditor for<br>CDCR; ELIZABETH DOS SANTOS<br>CHEN, individually and in her<br>official capacity as Chief Medical<br>Officer for the Southern Region of<br>Clinical Support for the CDCR;<br>DWIGHT W. WINSLOW, M.D.,<br>individually and in his official<br>capacity as statewide medical<br>director for the CDCR; TERRY HILL,<br>M.D., individually and in his official<br>capacity as Chief Medical Officer<br>and governing body member of the<br>CDCR; STEVEN F. RITTER, D.O.,<br>individually and in his official<br>capacity as Regional Director for the<br>Southern District of the CDCR;<br>DOES, 1-20, inclusive,<br>*Defendants-Appellees*. | No. 11-56525<br><br>D.C. No.<br>3:09-cv-02145-<br>L-BLM<br><br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, Senior District Judge, Presiding

Argued and Submitted
June 6, 2013—Pasadena, California

Filed August 15, 2013

Before: Sidney R. Thomas, Barry G. Silverman,
and Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's dismissal of an action brought under 42 U.S.C. § 1983 and state law which alleged that plaintiff was terminated without explanation from her independent contractor position as a nurse for the California prison medical care system and given negative job references that effectively barred her from further employment within the system.

The panel agreed with the district court that plaintiff did not have a constitutionally protected property interest in her independent contractor position. The panel held that a state

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

agency does not create protected property interests for its independent contractors simply by instituting performance review procedures.

The panel affirmed the district court's dismissal of plaintiff's federal deprivation of liberty claim, determining that plaintiff had not alleged that she was unable to find work as a nurse, only that she was unable to obtain work with the California Department of Corrections and Rehabilitation, and that this was insufficient to trigger the due process protections of the Fourteenth Amendment.

The panel affirmed the dismissal of the state law claims against Terry Hill, the former Chief Medical Officer for the Receiver of the California prison medical care system, determining that plaintiff's allegations concerning Hill were conclusory and implausible on their face.

---

**COUNSEL**

Suzanne M. Nicholson (argued), George E. Murphy, and Mark A. Campbell, Murphy, Campbell, Guthrie & Alliston, Sacramento, California, for Plaintiff-Appellant.

Elizabeth Vann (argued), Deputy Attorney General, Kamala D. Harris, Attorney General of California, Alicia M. B. Fowler, Senior Assistant Attorney General, and Christine Mersten, Supervising Deputy Attorney General, for Defendants-Appellees California Department of Corrections and Rehabilitation, Division of Correctional Health Care Services, James Ruddy, M.D., Elizabeth Dos Santos Chen, Dwight W. Winslow, M.D., and Steven F. Ritter, D.O.

Martin H. Dodd (argued), Futterman Dupree Dodd Croley Maier LLP, San Francisco, California, for Defendant-Appellee Terry Hill, M.D.

## OPINION

FISHER, Circuit Judge:

Plaintiff Christine Blantz was terminated without explanation from her independent contractor position as a nurse for the California prison medical care system.  When she applied for another position elsewhere within the California Department of Corrections and Rehabilitation (CDCR), she was informed that she had received poor recommendations and therefore did not meet the job requirements.  Upset that her position had been terminated and that she was unable to find other work within the CDCR, Blantz sued various CDCR employees and the CDCR itself.

The district court dismissed Blantz's two federal claims, which alleged that the defendants deprived her of property and liberty without due process in violation of the Fourteenth Amendment.  The district court dismissed *all* of Blantz's claims against defendant Terry Hill (the former Chief Medical Officer for the Receiver of the California prison medical care system) and remanded the remainder of Blantz's state law claims to San Diego Superior Court.

We agree with the district court that Blantz did not have a constitutionally protected property interest in her independent contractor position with the CDCR and that she failed to allege sufficient facts to state a claim for denial of liberty without due process.  We also agree that dismissal of

the claims against Dr. Hill was appropriate because Blantz's allegations concerning Hill were conclusory and implausible on their face.  We affirm.

## I.  Background

Blantz's complaint alleges the following facts.  In July 2006, Blantz entered into a written agreement with Newport Oncology and Healthcare, Inc. (NOAH) to work as a nurse practitioner for the CDCR.  The CDCR contracts with NOAH to identify available healthcare professionals and refer them to the CDCR to work in medical facilities owned by the CDCR throughout California.  Blantz agreed with NOAH to provide medical services to the CDCR as an independent contractor.  Pursuant to the agreement, Blantz's wages would be paid by NOAH, not by the CDCR.  NOAH was not allowed to exercise control over her job performance.

When Blantz began working for the CDCR, she attended an orientation session and received a number of documents explaining the CDCR's policies and procedures.[1]   In this lawsuit, Blantz contends that the content of these documents gives her a constitutionally protected property interest in her continued independent contractor position with the CDCR.

Blantz worked as a nurse practitioner for the CDCR at Calipatria State Prison from July 2006 to December 2007.  Blantz alleges, on information and belief, that in November

---

[1] The following documents were among those given to Blantz: (1) a Health Care Professionals Orientation Manual; (2) a document entitled "Licensed Independent Practitioners – Due Process"; (3) a handbook entitled "Nurse Practitioner Policy & Procedures"; and (4) a copy of Chapter 1, Division 3 of Title 15 of California Code of Regulations.

2007, defendant James Ruddy, a CDCR medical auditor, conducted an audit of Blantz's patient charts and provided a negative assessment of her performance. Blantz alleges that Ruddy's negative assessment was meritless and unwarranted. Blantz received no notice of the negative assessment. In December 2007, Blantz was informed by one of her supervising physicians that someone from the CDCR had decided to terminate Blantz's placement, but Blantz was not told the name of the person who made the decision. Blantz had not received notice of any contemplated corrective or adverse action against her prior to this date, and she was never given advance notice of her dismissal or informed of the reasons for her dismissal. Blantz's contract with NOAH states that the contract can be terminated immediately if the CDCR requests that Blantz be removed from the placement. After being fired, Blantz attempted unsuccessfully to uncover the official reason for her termination, including pursuing state administrative remedies.

In February 2008, Blantz applied to work elsewhere in the CDCR, but she was informed by a "third party" that she had poor recommendations from her previous work at CDCR and that she no longer met their requirements. Blantz has been unable to ascertain either the identity of the person who gave her the poor recommendations or the precise nature of the poor recommendations.

Blantz filed suit in California state court against the CDCR, Ruddy and four other CDCR officials: Elizabeth Dos Santos Chen (Ruddy's supervisor), Steven Ritter (regional director for the Southern California district of the CDCR), Dwight Winslow (state medical director for the CDCR) and Terry Hill, the Chief Medical Officer for the Receiver of the

California prison medical care system.[2]  Dr. Hill removed the case to the federal District Court for the Southern District of California.

The operative second amended complaint included 11 causes of action, including two claims under 42 U.S.C. § 1983 alleging that the defendants, under color of state law, deprived Blantz of property and liberty without due process.[3] The district court dismissed without leave to amend the federal causes of action against all defendants, as well as all other causes of action against Hill, and remanded the remaining state law claims to San Diego Superior Court. Blantz appeals.

## II.  Standard of Review

We review de novo the district court's order granting a motion to dismiss.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008).  On a motion to dismiss, the factual allegations in the complaint are accepted as true, and the pleadings are construed in the light most favorable to the non-moving party, *see id*. at 1031, but we need not accept as true factual allegations that are not

---

[2] In *Plata v. Schwarzenegger*, a federal district court placed the California prison medical care system into receivership.  *See* Order Appointing Receiver, *Plata v. Schwarzenegger*, No. 01-1351-TEH (N.D. Cal. Feb. 14, 2006), ECF No. 473.

[3] The nine state law claims are intentional interference with contractual relations, intentional interference with prospective economic relations, negligent interference with prospective economic relations, wrongful termination, breach of contract, defamation, violation of right to privacy, violation of due process under the California Constitution and breach of mandatory duty under California Government Code section 815.6.

plausible on their face, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). We review the district court's denial of leave to amend for abuse of discretion. *See Manzarek*, 519 F.3d at 1031.

## III.  Discussion

### A.  Denial of a Property Interest Without Due Process

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Before the state deprives someone of a protected property interest, "the right to some kind of prior hearing is paramount." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70 (1972). "But the range of interests protected by procedural due process is not infinite." *Id*. at 570. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of *entitlement* to it." *Id*. at 577 (emphasis added). "Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*.

In a pair of companion cases handed down the same day, the Supreme Court explained that government employees can have a protected property interest in their continued employment *if* they have a legitimate claim to tenure or if the terms of the employment make it clear that the employee can

be fired only for cause.   *See id*. at 576–78; *Perry v. Sindermann*, 408 U.S. 593, 599–603 (1972).

*Board of Regents* involved an assistant professor at a state university whose employment was not renewed at the end of his first academic year and who was given no reason for the non-renewal and no opportunity to challenge the decision at a hearing.  *See Bd. of Regents*, 408 U.S. at 566, 568.  When the professor sued for deprivation of property without due process, the Court held that he did not have a protected property interest in his continued employment because his employment contract was for a fixed one-year term and state law provided that a state university teacher could acquire tenure only after four years of year-to-year employment.  *See id*. at 566, 576–78.

> [T]he terms of [Roth's] appointment secured absolutely no interest in re-employment for the next year.  They supported absolutely no possible claim of entitlement to re-employment. . . .   In these circumstances, [Roth] surely had an abstract concern in being rehired, but he did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment.

*Id*. at 578.

*Sindermann* concerned a teacher in a state college system who, after 10 years of employment under year-to-year contracts, had his contract terminated by the Board of Regents.  *See Sindermann*, 408 U.S. at 594–95.  Like Roth, Sindermann was not provided an official reason for the

failure to renew his contract nor a hearing or other opportunity to challenge the basis for his non-renewal. *See id*. at 595. The Court held that although Sindermann's employment contract did not provide for tenure, he might be able to show that the college had adopted a de facto tenure program under which Sindermann had tenure. *See id*. at 599–600. The Court pointed to a faculty guide that provided: "Teacher Tenure: Odessa College has no tenure system. The administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work." *Id*. Although not finding the faculty guide necessarily created a protected property interest, the Court held it was sufficient to create a triable issue of fact that precluded summary judgment:

> A teacher, like [Sindermann], who has held his position for a number of years, might be able to show from the circumstances of this service – and from other relevant facts – that he has a legitimate claim of entitlement to job tenure. . . . [T]here may be an unwritten 'common law' in a particular university that certain employees shall have the equivalent of tenure. This is particularly likely in a college or university . . . that has no explicit tenure system even for senior members of its faculty, but that nonetheless may have created such a system in practice.

*Id*. at 602. Relying on the principles outlined in these cases, Blantz argues that she has a constitutionally protected

property interest in her continued employment with the CDCR.

A key distinction is that Blantz was not an *employee* of the CDCR – she was an independent contractor.**⁴** We assume without deciding that independent contractors can potentially have a constitutionally protected property interest in their continued independent contractor positions with the government. Even so, the mere fact of an independent contractor relationship with the state is insufficient, on its own, to create a constitutionally protected property interest. There must be some source, recognized under state law, for Blantz's claimed *entitlement* to her position, not merely her unilateral expectation that it would continue. *See Bd. of Regents*, 408 U.S. at 577. Blantz's contract with NOAH certainly does not create such an entitlement. On the contrary, the contract specifically states that NOAH could terminate Blantz's position for any reason with 30 days'

---

**⁴** The cases Blantz cites to support her property interest argument all involve employees, not independent contractors paid through an agency. *See Int'l Bhd. of Elec. Workers v. City of Gridley*, 666 P.2d 960, 970 (Cal. 1983) (holding that "full time, permanent, nonprobationary employees" had a protected property interest in their continued employment where the city's personnel rules stated that the employees could be discharged only for certain enumerated causes); *Mendoza v. Regents of Univ. of Cal.*, 144 Cal. Rptr. 117, 118, 120–22 (Ct. App. 1978) (holding that a "full-time career employee" of the UCSF medical center had a protected property interest in her continued employment); *Skelly v. State Personnel Bd.*, 539 P.2d 774, 776, 784 (Cal. 1975) (holding that a physician in the state Department of Health Care Services who was a "permanent civil service employee[]" had a protected property interest in his continued employment); *see also Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904–05 (9th Cir. 1993) (holding that a public defender did *not* have a property right in his job where city and state law provided that the public defender serves at the will of the Board of Supervisors).

notice, and that it could terminate the agreement *immediately* if the CDCR requests that Blantz be removed from the placement, which is what happened here.

Nevertheless, Blantz argues that the documents she received during her orientation created an entitlement to her continued placement with CDCR absent good cause to terminate her. These documents do not support Blantz's claim that she could be terminated only for cause after notice and a hearing.[5]

The orientation documents explain the CDCR's peer review procedures, which are used both for periodic performance assessments and, when appropriate, for discipline. However, none of the documents states that independent contract nurses have tenure or that they can be fired only for cause. Furthermore, although termination *can*

---

[5] The defendants argue that regardless of their content, the orientation documents cannot create a protected property interest because "[u]nder California law, the terms of *public* employment are governed entirely by statute, not by contract, and hence, 'as a matter of law, there can be no express or implied-in-fact contract . . . which restricts the manner or reasons for termination of [public] employment.'" *Portman*, 995 F.2d at 905 (quoting *Summers v. City of Cathedral City*, 275 Cal. Rptr. 594, 605 (Ct. App. 1990)). Under *Portman*, defendants argue, Blantz can have tenure in her nursing position only if a *statute* confers such a right on her, and California statutes provide tenure only to those who are employed as part of the regular civil service. *See* Cal. Const. art VII, § 1; Cal. Gov't Code § 18500, *et seq*. Blantz counters that *Portman* concerns only state *employees*, not independent contractors. Because no statute governs the rights of California's independent contractors, she argues, the court should return to the principles in *Board of Regents* and *Sindermann* to determine if she has a protected property interest. We need not resolve this question, because even if independent contractors could have a property interest in their continued position derived solely from contract, the pertinent documents in this case do not create such an entitlement.

occur as a result of the performance review procedures detailed in the orientation documents, the documents do not guarantee that every termination *must* be preceded by a peer review process or any other specified departmental procedures.

We hold that a state agency does not create constitutionally protected property interests for its independent contractors simply by instituting performance review procedures. Even assuming independent contractors can ever have constitutionally protected property interests in their positions, something more is required: either an affirmative grant of tenure or a guarantee from the government that termination can occur only for cause. Absent such assurances, there is no cognizable basis for an independent contractor to assert an entitlement to her continued position that is constitutionally protected. Because Blantz's orientation documents did not contain such assurances, we affirm the district court's dismissal of Blantz's federal deprivation of property claim.

## B. Denial of a Liberty Interest Without Due Process

Blantz's other federal cause of action alleges that the CDCR and Ruddy deprived her of a liberty interest – her ability to obtain employment as a nurse – without due process by giving negative job references that effectively barred her from any employment in the CDCR. A "public employer can violate an employee's rights by terminating the employee if in so doing, the employer makes a charge 'that might seriously damage [the terminated employee's] standing and associations in his community' or 'impose[s] on [a terminated employee] a stigma or other disability that foreclose[s] his freedom to take advantage of other opportunities." *Tibbetts*

*v. Kulongoski*, 567 F.3d 529, 536 (9th Cir. 2009) (alterations in original) (quoting *Bd. of Regents*, 408 U.S. at 573).**[6]**

The district court correctly noted, however, that the liberty interests protected by the Fourteenth Amendment are implicated only when the government's stigmatizing statements effectively exclude the employee completely from her chosen profession. Stigmatizing statements that merely cause "reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession" do not constitute a deprivation of liberty. *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 366 (9th Cir. 1976); *see also Roth v. Veteran's Admin.*, 856 F.2d 1401, 1411 (9th Cir. 1988), *overruled on other grounds by Garcetti v. Ceballos*, 547 U.S. 410 (2006). "[P]eople do not have liberty interests in a specific employer," *Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1128 (9th Cir. 2001), or in a civil service career generally, *see Clemente v. United States*, 766 F.2d 1358, 1365–66 (9th Cir. 1985). Thus, stigmatizing statements do not deprive a worker of liberty unless they effectively bar her from *all* employment in her field. *See Roth v. Veteran's Admin.*, 856 F.2d at 1411 (holding that no liberty interest was implicated because "Roth has set forth no facts in the

---

**[6]** Accusations of dishonesty or immorality are sufficiently stigmatizing to implicate a liberty interest, but less severe accusations must be analyzed on a case-by-case basis, and allegations of mere incompetence or inability are not sufficient. *See Roth v. Veteran's Admin.*, 856 F.2d 1401, 1411 (9th Cir. 1988), *overruled on other grounds by Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 365–66 (9th Cir. 1976). Blantz alleges, on information and belief, that the poor recommendation she received included "unwarranted and false information concerning her reputation for honesty and/or morality," which we will accept as true for the purpose of the motions to dismiss.

complaint or in the affidavits indicating that the defendants stigmatized him to the extent of foreclosing his opportunity to practice his chosen profession").

Relying on *Board of Regents*, Blantz argues that complete exclusion from *government* employment is a sufficient injury to constitute a deprivation of liberty and that exclusion from one's entire field in both the public and private sector is not required. Indeed, *Board of Regents* noted that it "would be a different case" if the defendants had "invoke[d] any regulations to bar the respondent from all other public employment in state universities." *Bd. of Regents*, 408 U.S. at 573–74; *see also id*. at 574 ("[T]o be deprived not only of present government employment but of future opportunity for it is certainly no small injury." (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 185 (1951) (Jackson, J., concurring))). Even so, the defendants here are not alleged to have precluded Blantz from all government employment, only employment with the CDCR. Blantz allegedly has been barred from employment with one division of the state government; but she is free to seek other nursing positions with the state. Thus, she has not alleged an unconstitutional deprivation of liberty. *See Llamas*, 238 F.3d at 1128 (holding that the government had not deprived plaintiff of liberty when plaintiff was barred from future employment with one community college district, but was free to pursue employment elsewhere).

Blantz has not alleged that she has been unable to find work as a nurse, only that she has been unable to obtain work

*with the CDCR*.[7]   Because Blantz's liberty interest is in her profession as a nurse, not her placement with a particular employer, *see Llamas*, 238 F.3d at 1128, this allegation is insufficient to trigger the due process protections of the Fourteenth Amendment.  We therefore affirm the district court's dismissal of Blantz's federal deprivation of liberty claim.

## C.  State Law Claims Against Dr. Hill

In February 2006, the federal district court presiding over the *Plata v. Schwarzenegger* litigation placed the California prison medical care system into receivership and gave the Receiver complete authority over the prison health care system, including the power to hire and fire employees and contract personnel.  *See* Order Appointing Receiver, *Plata v. Schwarzenegger*, No. 01-1351-TEH (N.D. Cal. Feb. 14, 2006), ECF No. 473.[8]  With approval from the *Plata* district court, the Receiver hired Hill to function as the Receiver's Chief Medical Officer, and Hill became a member of the Governing Body of the CDCR.  *See* Receiver's First Bi-Monthly Report, *Plata v. Schwarzenegger*, No. 01-1351-TEH

---

[7] When the district court dismissed the deprivation-of-liberty claim the first time, it held that Blantz's failure to allege that she was unable to find *any* work in her chosen profession was one of the deficiencies.  Blantz's second amended complaint did not allege that Blantz was unable to find any work as a nurse, nor does she argue that further leave to amend could cure this defect.

[8] *Plata v. Schwarzenegger* is a class action lawsuit brought by California state prisoners to "challenge deficiencies in prison medical care that allegedly violated the Eighth Amendment and the Americans with Disabilities Act."  603 F.3d 1088, 1090 (9th Cir. 2010).

(N.D. Cal. July 5, 2006).**[9]** Hill removed Blantz's lawsuit from state court to federal court on the basis of federal question jurisdiction and based on his position as an agent of the Receiver, a federal officer.

The only allegations that mention Hill are that, "on information and belief," he "direct[ed]" the other defendants to take the actions that form the basis of the complaint. For example, Blantz alleges: "On information and belief, the CDCR's failure to notify Plaintiff of th[e] negative assessment was at the direction of defendants WINSLOW, DOS SANTOS CHIN [sic], RITTER, HILL and DOES 1–20 inclusive."

Conclusory allegations such as these are insufficient to state a claim against Hill. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). A complaint will not survive a motion to dismiss if it "tenders naked assertions devoid of further factual enhancement." *Id*. at 678 (alteration and internal quotation marks omitted). Blantz's complaint does not contain any specific factual allegations regarding Hill's involvement in the actions giving rise to this lawsuit: the negative performance review, the termination of her placement, the failure to provide notice of these decisions and the negative job references. Although Hill is alleged to have "directed" the other defendants to take these actions, no factual assertions support this allegation, and the conclusory allegations are insufficient on their own to defeat a motion to dismiss. *See Chavez v. United States*, 683 F.3d 1102, 1110

---

**[9]** We take judicial notice of the Receiver's First Bi-Monthly Report. *See* Fed. R. Evid. 201(c).

(9th Cir. 2012) (discounting the "wholly conclusory allegation that the supervisory defendants 'personally reviewed and, thus, knowingly ordered, directed, sanctioned or permitted'" traffic stops that allegedly violated the Fourth Amendment).

Moreover, the allegation that Hill – the Chief Medical Officer of the Receiver and a member of the Governing Body of the CDCR – had any role in or knowledge of the decision to terminate Blantz or give her a negative reference is not "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (dismissing a case where the plaintiffs' allegations had "not nudged their claims across the line from conceivable to plausible"). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. It is plausible that the CDCR employees who made the decisions and took the actions Blantz complains of did so at the direction of their *immediate* superiors. But common sense requires us to reject the allegation that the Chief Medical Officer for the state-wide prison system, who sits on the Governing Body, was personally involved in the decision to terminate Blantz as an independent contractor nurse at Calipatria state prison or to give her a negative job reference. In light of the threadbare allegations of Hill's personal involvement and the inherent implausibility of the allegations, Blantz's attempt to hold him liable does not satisfy the pleading standards of Rule 8, as described in *Iqbal* and *Twombly*. The district court properly dismissed the entire lawsuit against Hill.

### D.  Leave to Amend

Blantz argues that she should have been given leave to amend her complaint to state causes of action against Hill. She argues that she could allege other, similar instances of the CDCR terminating health care providers and practitioners without notice or a hearing in violation of their rights, and she could allege Hill's knowledge of these instances and failure to take any action to prevent further violations of this nature. From Blantz's description of the proposed amendments, however, it appears the new allegations she envisions would merely be additional conclusory allegations of the sort that are insufficient under *Iqbal* and *Twombly*.  The district court therefore did not abuse its discretion in denying Blantz leave to amend.

**AFFIRMED.**