FILED
United States Court of Appeals
Tenth Circuit

October 8, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TYRONE WALKER,

     Plaintiff-Appellant,

v.

JOHN W. HICKENLOOPER, in his
individual capacity; BILL RITTER,
JR., in his individual capacity;
ARISTEDES W. ZAVARAS, in his
individual and official capacities; RICK
RAEMISCH, in his individual and
official capacities; KEVIN MILYARD,
in his individual and official capacities;
JAMES FALK, in his individual and
official capacities; JOHN
CHAPDELAINE, #10277, in his
individual and official capacities;
JAMIE SOUCIE, #12620, in her
individual and official capacities;
MARSHALL GRIFFITH, #14298, in
his individual and official capacities;
JULIE FULLER, #10068, in her
individual and official capacities;
ASTRIA LOMBARD, #14539, in her
individual and official capacities; JANE
DOE, in her individual and official
capacities,

     Defendants-Appellees.

No. 14-1462
(D.C. No. 1:14-CV-01062-BNB)
(D. Colorado)

_____

**ORDER AND JUDGMENT**[*]

_____

[*]    The parties have not requested oral argument, and the Court concludes that
oral argument would not materially aid our consideration of the appeal. *See* Fed.
R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G). Thus, we have decided the appeal

Before **HOLMES**, **MATHESON**, and **BACHARACH**, Circuit Judges.

Mr. Tyrone Walker is an inmate at a state prison in Sterling, Colorado. The city's water supply was contaminated with uranium, and Mr. Walker and other inmates learned of the contamination when reading a local newspaper. After inmates asked about the reported contamination, prison officials allegedly downplayed the health effects and supplied water from an alternative source that was also contaminated. Mr. Walker filed grievances through the prison administrative process, but was dissatisfied with the responses. As a result, he sued state and prison officials under 42 U.S.C. § 1983, claiming that they had withheld information, leading him to continue drinking the contaminated water. The district court dismissed the action, and Mr. Walker appeals. We affirm in part and reverse in part.

## I.    Official-Capacity Claims

Mr. Walker sued many of the defendants in their official capacities, as well as in their personal capacities. On the official-capacity claims, Mr. Walker asked

---

based on the briefs.

Our order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

for damages, a declaratory judgment, and an injunction. Focusing on the claims for damages, the official-capacity defendants moved for dismissal under the Eleventh Amendment. On appeal, however, Mr. Walker clarifies that he is not seeking damages from the defendants in their official capacities. Appellant/Petitioner's Opening Br. at 43-44. As a result, we need not address the defendants' Eleventh Amendment argument on damages.[1]

## II.    Personal-Capacity Claims

In the district court, Mr. Walker asserted claims for (1) cruel and unusual punishment based on intolerable conditions of confinement and deliberate indifference to serious medical needs and (2) denial of the right to access the federal courts. All defendants moved for dismissal based on qualified immunity. The district court granted the motions, holding that the personal-capacity defendants were entitled to qualified immunity. On appeal, we agree with this ruling for John Hickenlooper, Bill Ritter, Jr., Aristedes Zavaras, Rick Raemisch, James Falk, Jamie Soucie, Marshall Griffith, Julie Fuller, and Astria Lombard; and we disagree with respect to Kevin Milyard, John Chapdelaine, and Jane Doe.

---

[1]    Mr. Walker has also asked for declaratory and injunctive relief. For these requests, neither the district court nor the parties have raised the Eleventh Amendment. Nonetheless, we enjoy discretion to consider the Eleventh Amendment sua sponte. *See Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 389 (1998) (stating that a court can, but need not, consider Eleventh Amendment issues sua sponte). We decline here to exercise that discretion in light of the absence of input from the parties or the district court. Thus, our decision does not affect Mr. Walker's official-capacity claims for declaratory and injunctive relief.

**A.     Test for Qualified Immunity**

Because the defendants invoked qualified immunity, Mr. Walker incurred a burden to show that

- the defendants violated a constitutional or statutory right and

- the underlying right was clearly established.

*See Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

**B.     Conditions of Confinement**

On the claim involving intolerable conditions, Mr. Walker sued governors, prison wardens, prison officials who handled Mr. Walker's grievances, executive directors of the state department of corrections, and an unidentified nurse.

**1.     Claims Against Governors (John Hickenlooper and Bill Ritter, Jr.)**

Mr. Walker claims that two governors caused intolerable conditions in the prison by knowingly allowing inmates to continue drinking contaminated water. The governors argue that Mr. Walker has failed to allege facts reflecting the violation of a clearly established right. We agree. Even if we credit Mr. Walker's allegations at face value, the governors would be entitled to qualified immunity based on Mr. Walker's failure to allege facts suggesting the underlying right was clearly established.

Ordinarily, a right is considered "clearly established" only if it has been recognized in a precedential decision or the clearly established weight of

-4-

authority from other courts. *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015). This test has not been met, for no federal appellate court has held in a published decision that state governors violate the U.S. Constitution by failing to remedy contamination of a prison's water supply. In the absence of such a published decision, we do not regard the underlying right as clearly established. *See Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1067 (2d Cir. 1989) (holding that a governor enjoyed qualified immunity based on the absence of a case holding a governor liable in similar circumstances).

**2.      Claims Against Two Prison Wardens (Kevin Milyard and James Falk) and an Associate Warden (John Chapdelaine)**

Mr. Walker also sued three prison officials who had served either as warden or associate warden. These allegations involve the wardens'

- knowledge that the Sterling and alternative supplies of water were contaminated and

- deceptive assurances to the prison population that the water was safe, inducing Mr. Walker to continue drinking the contaminated water while unaware of the health risks.

Responding to these allegations, the wardens implicitly argue that Mr. Walker failed to satisfy the first prong of qualified immunity: the violation of a constitutional or statutory right.

To overcome reliance on the first prong of qualified immunity, Mr. Walker needed to plead facts sufficient to create a plausible inference of deliberate indifference by the prison officials. *See Dodds v. Richardson*, 614 F.3d 1185,

1197-98 (10th Cir. 2010) (discussing the need for the plaintiff to "plausibly plead" deliberate indifference).

In deciding whether Mr. Walker satisfied his pleading burden, we assume that his allegations in the amended complaint are true. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Those allegations vary among the wardens. For Mr. Chapdelaine and Mr. Milyard, the allegations satisfy Mr. Walker's burden to plead a plausible claim of deliberate indifference. But the allegations against Mr. Falk are insufficient.

The allegations against Mr. Chapdelaine are the strongest. According to the amended complaint, Mr. Chapdelaine knew that the Sterling water supply had been contaminated. His knowledge allegedly came from a state administrative notice that disclosed contamination of the city's water supply and encouraged citizens to use alternative water sources. R. at 49 ¶ 3. Nonetheless, Mr. Chapdelaine allegedly told the inmates that the tap water was perfectly safe to drink. *Id.* at 50 ¶¶ 8-9. Mr. Walker adds that he relied on these assurances, drinking the tap water and incurring enormous health risks as a result. *Id.* at 50 ¶ 10. Based on these allegations, a reasonable fact-finder could infer that Mr. Chapdelaine acted with deliberate indifference to Mr. Walker's health.

The allegations against Mr. Milyard also indicate deliberate indifference. In the amended complaint, Mr. Walker alleges that Mr. Milyard

- knew of the contamination while serving as warden and

- did nothing to provide safe water even though he knew his inaction would create serious health risks for Mr. Walker.

*Id.* at 57 ¶ 53. Mr. Walker explains that Mr. Milyard received the state administrative notice disclosing the presence of uranium in the Sterling water supply and advising citizens not to consume the city's tap water. R. at 57 ¶¶ 51-52. With this explanation, Mr. Walker has plausibly alleged that Mr. Milyard knew about the health risks from contamination of the Sterling water supply.[2]

The allegations against Mr. Falk are weaker, for they are based solely on contamination of the alternative water source.[3] The amended complaint states that Mr. Falk knew the alternative source was contaminated, but Mr. Walker does not identify any supporting facts. *Id.* at 59 ¶ 58. He simply alleges on "information and belief" that another prisoner said the alternative source was contaminated. *Id.* at 56 ¶ 47. But this allegation on information and belief does not disclose

- how that inmate knew the alternative water source was contaminated or

- how Mr. Falk knew about the contamination.

---

[2] Mr. Chapdelaine and Mr. Milyard argue that the amended complaint does not provide a basis to infer that they knew about the contamination. We reject this argument with respect to contamination of the original water supply. But the wardens' argument is correct with respect to contamination of the alternative water source. *See* pp. 7-8 below.

[3] Mr. Walker alleges that Mr. Falk knew about the contamination at Sterling and the resulting health risks. R. at 58 ¶ 57. But Mr. Falk's alleged misconduct involved only his participation in supplying contaminated water from the alternative source, not the water from Sterling. *Id.* at 59 ¶ 58.

Mr. Walker's allegations on information and belief provide no plausible basis to believe that Mr. Falk knew the alternative source was contaminated. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."); *see also Blantz v. Cal. Dep't of Corrs. & Rehab.*, 727 F.3d 917, 926-27 (9th Cir. 2013) (concluding that a plaintiff's allegations on information and belief, without supporting factual assertions, are insufficient to state a valid claim regarding a defendant's alleged action). As a result, we affirm the district court's dismissal of the conditions-of-confinement claim against Mr. Falk.

### 3. Claims Against Individuals Who Denied Grievances (Julie Fuller, Jamie Soucie, Marshall Griffith, and Astria Lombard)

Before suing in federal court, Mr. Walker submitted multiple grievances through the prison's administrative system, complaining of the contamination.[4] The grievances were denied by Ms. Julie Fuller, Ms. Jamie Soucie, Mr. Marshall Griffith, and Ms. Astria Lombard. Based on the denial of grievances, Mr. Walker included these individuals among the defendants. In turn, they implicitly rely on the first prong of qualified immunity: the lack of an underlying constitutional or statutory violation. We agree with these defendants, concluding that Mr. Walker has not alleged facts indicating that they violated an underlying constitutional or statutory right.

---

[4]     The grievances are not in the record on appeal.

-8-

The claims are based on the denial of Mr. Walker's grievances. R. at 59-60 ¶ 62. But even if his allegations are credited, the officials would not incur personal liability because we have squarely held that a prison official's denial of a grievance cannot create liability under § 1983. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).[5] As a result, the claims against the grievance officers were properly dismissed.

### 4. Claim Against Executive Directors of the State Department of Corrections (Aristedes Zavaras and Rick Raemisch)

The defendants include two individuals who had served as Executive Director of the state department of corrections.[6] These individuals implicitly rely on the first prong of qualified immunity: the lack of an underlying constitutional or statutory violation. We conclude that the amended complaint is deficient because Mr. Walker has not alleged facts suggesting that these individuals participated in the alleged wrongdoing.

---

[5] Mr. Walker argues that the officials should have rectified the problem because prison policy requires inmates to forward grievances to the official with the "authority or skill and ability to remedy the grieved issue(s)." Appellant/ Petitioner's Opening Br. at 20. But the alleged wrongdoing involves only what the prison officials failed to do when addressing the grievances. *Id.* at 21. Under *Gallagher*, personal liability cannot be based on a prison official's failure to rectify a condition in the course of handling a grievance. 587 F.3d at 1069.

[6] Mr. Walker also sued (1) Mr. Tony Carochi, who had served as Executive Director on an interim basis; and (2) Mr. Tom Clements, who had served as Executive Director. Mr. Clements died, and Mr. Walker failed to serve Mr. Carochi. These individuals are not parties to the appeal.

Mr. Walker had an obligation to explain in the amended complaint what each individual did, how the action caused harm, and how the action violated an identifiable legal right. *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). Mr. Walker failed to satisfy this obligation, for he said nothing in the amended complaint about any wrongful actions or omissions on the part of Mr. Zavaras. The circumstances are slightly different for Mr. Raemisch, for he allegedly issued a memorandum about the contamination. But Mr. Walker does not say whether that memorandum resulted in harm or violated an identifiable legal right. In these circumstances, we conclude that the district court properly dismissed the claims against Mr. Zavaras and Mr. Raemisch.[7]

### 5. Claim Against Jane Doe

Mr. Walker also sued an unidentified nurse, designated "Jane Doe." According to Mr. Walker, the nurse incurred liability by stating that the water was safe to drink. The defendants do not address the allegations against the nurse.

The district court addressed the allegations in three sentences, ultimately rejecting the claim as "conclusory":

1. "The plaintiff summarily alleges that Jane Doe 'had the ability to provide the plaintiff with, at the minimum, alternative, uncontaminated drinking water.'"

---

[7] We do not rule out the possibility that Mr. Walker could adequately plead wrongdoing by the executive directors. But the existing allegations do not allege wrongdoing on their parts.

2. "That conclusory allegation is insufficient to state a plausible claim for relief against Jane Doe for exposing the plaintiff to contaminated drinking water."

3. "Claim One is dismissed as against Jane Doe."

R. at 218-19. In our view, the district court erred in treating the allegations against Jane Doe as "conclusory."

The term "conclusory" refers to the expression of "a factual inference" without including "the underlying facts on which the inference is based." *Black's Law Dictionary* (10th ed. 2014). But Mr. Walker provided two sets of allegations about the facts underlying his claim against the nurse.

The first set of allegations involves the nurse's knowledge of the contamination. Mr. Walker alleges that the nurse knew the water was contaminated because she was a long-time resident of Sterling and had received the state administrative notice disclosing the contamination. R. at 49 ¶¶ 3-4, 60 ¶¶ 63-64.

The second set of allegations involves what the nurse said and did with her alleged knowledge of contamination. Mr. Walker alleges that (1) he complained of symptoms from the contamination and (2) the nurse responded that the water was safe to consume. *Id.* at 55 ¶¶ 40, 42; *id.* at 60 ¶ 65. In addition, Mr. Walker alleges that the nurse failed to protect against further contamination even though she could have provided safe drinking water. *Id.* at 60 ¶ 65.

These allegations are not "conclusory." Mr. Walker alleges facts creating a reasonable inference that the nurse deliberately downplayed the risks from drinking the contaminated water, knowing that her words would likely induce Mr. Walker to continue drinking contaminated water and incur serious risks to his health. Under these circumstances, the district court should not have dismissed the claim against the nurse on the basis that it was "conclusory."

### C.       Deliberate Indifference to Serious Medical Needs

A prison official can incur personal liability for deliberate indifference to a prisoner's serious medical needs. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). According to Mr. Walker, all defendants displayed indifference to his medical problems from drinking the prison's contaminated water. These claims were properly dismissed.

### 1.       Available Medical Claims for Deliberate Indifference

Two types of medical claims are possible. In the first, a medical professional fails to properly treat an inmate's serious medical condition. *Id.* In the second, a prison official fails as a "gatekeeper" by preventing a prisoner's access to further medical care. *Id.* at 1211. Mr. Walker invokes both theories, asserting the first theory against Jane Doe and the second theory against all of the defendants.

### 2. The Failure to Properly Treat a Serious Medical Condition (Jane Doe)

Mr. Walker states in the amended complaint that after experiencing swelling of his gums, dehydration, and nausea, he went to the prison infirmary twice, where Jane Doe measured his blood pressure, temperature, and heart rate. R. at 55 ¶ 40.[8] These allegations show that the nurse provided at least some treatment. Though Mr. Walker may think the treatment was insufficient, his disagreement does not support liability under § 1983. *See Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999). As a result, no fact-finder could reasonably infer that the nurse was deliberately indifferent.

### 3. Failure to Act as a Gatekeeper (All Defendants)

Mr. Walker also asserts a second theory of liability, claiming that all defendants denied him access to further medical care. In our view, Mr. Walker's allegations do not support liability under this theory.

#### a. Defendants Hickenlooper, Ritter, Zavaras, Raemisch, Milyard, Falk, Chapdelaine, Soucie, Griffith, Fuller, and Lombard

On appeal, Mr. Walker contends that defendants Hickenlooper, Ritter, Zavaras, Raemisch, Milyard, Falk, Chapdelaine, Soucie, Griffith, Fuller, and Lombard acted with deliberate indifference as "gatekeepers" by disallowing

---

[8] On another visit, an unidentified nurse also took some of Mr. Walker's blood for testing. R. at 54 ¶ 32. Mr. Walker does not say whether this was the same nurse he elsewhere identifies as "Jane Doe."

further medical care even though they knew of the health risks from drinking contaminated water. Appellant/Petitioner's Opening Br. at 33. But the defendants' alleged acts would not create personal liability as "gatekeepers" for Mr. Walker's medical treatment.

Mr. Walker's theory of liability is based on our decision in *Mata v. Saiz*, where we held that a prison health official who acts "'solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'" 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock*, 218 F.3d at 1211). After deciding *Mata*, we explained in *Self v. Crum* that gatekeeper liability requires proof that the need for further treatment is "obvious." 439 F.3d 1227, 1232 (10th Cir. 2006). In *Self*, we gave three examples where the need may be obvious:

1. a medical professional recognizes the need for further medical treatment and declines or refuses to provide a referral;

2. a medical professional fails to treat a condition that would have been obvious even to a layperson; and

3. a medical professional denies care though presented with recognizable symptoms.

*Id.*

Mr. Walker's allegations in the amended complaint would not support personal liability based on the defendants' roles as "gatekeepers." In the amended

complaint, Mr. Walker does not suggest that he made his symptoms known to Mr. Hickenlooper, Mr. Ritter, Mr. Zavaras, Mr. Raemisch, Mr. Milyard, Mr. Falk, Mr. Chapdelaine, Ms. Soucie, Mr. Griffith, Ms. Fuller, or Ms. Lombard. Absent such allegations, we have no reason to believe that (1) these defendants played a role in determining whether Mr. Walker needed further medical care or (2) Mr. Walker's need for further medical treatment would have been obvious to these defendants. Accordingly, the district court properly dismissed Mr. Walker's claims against these eleven defendants based on their alleged roles as gatekeepers.

### b. Jane Doe

In his opening brief, Mr. Walker also argues that Jane Doe prevented further medical care. Appellant/Petitioner's Opening Br. at 35. But Mr. Walker did not identify any facts in the amended complaint suggesting that Jane Doe prevented further medical treatment. Thus, any claim against Jane Doe would necessarily be confined to the first theory of liability (discussed above), involving deficiencies in medical treatment. In these circumstances, we conclude that the district court properly dismissed Mr. Walker's claim against Jane Doe based on her role as gatekeeper.

**D.      Claim Involving Denial of the Right to Access the Courts (John Chapdelaine)**

Mr. Walker also sued one of the prison wardens (John Chapdelaine) for denial of the right to access the courts. For this claim, Mr. Walker must plead facts showing an actual injury regarding a nonfrivolous legal claim. *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010). The district court dismissed this claim, reasoning that Mr. Walker did not incur an injury because he was eventually able to prosecute his claim involving intolerable conditions of confinement. R. at 222. We agree with the district court.

According to Mr. Walker, Mr. Chapdelaine tried to avoid litigation by concealing contamination of the water supply for six years. But Mr. Walker was ultimately able to litigate the underlying claim through this suit.

We evaluate this scenario against the backdrop of our case law. In our cases, claims involving denial of court access can be "forward-looking" or "backward-looking."

In forward-looking claims, inmates seek to remove obstacles that prevent litigation. *See Christopher v. Harbury*, 536 U.S. 403, 413 (2002). For example, inmates may seek greater law library access so that they can obtain the information required to sue. *See id.*

In backward-looking claims, inmates claim that their suits ended poorly or were ultimately precluded because of a state actor's past misconduct. *Id.* at

-16-

413-14. For example, prisoners might claim that their suits became time-barred because the State destroyed evidence.[9]

Neither situation covers Mr. Walker's claim.

The claim is not forward-looking, for Mr. Walker does not allege an existing barrier to court access. After all, he is in court, suing over the contamination that was allegedly concealed for six years.

Mr. Walker's claim might be considered backward-looking, except Mr. Walker does not allege that his suit is less likely to succeed because of the six-year delay. Delay alone is not enough, for an inmate asserting a backward-looking claim must identify a remedy that is no longer available in a "suit that may yet be brought." *Id.* at 415.

We addressed a similar issue in *Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004). There a plaintiff asserted a backward-looking claim based on destruction of evidence and investigative irregularities that impeded the filing of a tort action. *Jennings*, 383 F.3d at 1207. We rejected the plaintiff's backward-looking claim as a matter of law based on her ability to eventually sue the tortfeasors. *Id.* at 1209.

---

[9]     We assume, for the sake of argument, that backward-looking claims are valid in our circuit. *Cf. Lynch v. Barrett*, 703 F.3d 1153, 1161-62 (10th Cir. 2013) (noting that neither the Supreme Court nor this circuit had "defined the right of court access to include a backwards looking claim based on a 'conspiracy of silence' aimed at interfering with an individual's ability to procure evidence of official misconduct").

Mr. Walker was also eventually able to sue the alleged wrongdoers. Though his suit was allegedly delayed for six years, Mr. Walker was ultimately able to sue over the contamination. And even now, he does not supply any reason to believe he is less likely to succeed because of Mr. Chapdelaine's alleged concealment. The absence of such an allegation is fatal, and the district court properly dismissed the court-access claim.

## III.    Application for Leave to Proceed in Forma Pauperis

Mr. Walker requests leave to proceed in forma pauperis. This request is granted. We remind Mr. Walker of his statutory obligation to continue making installment payments on the filing fee until it is paid in full. *See* Prison Litigation Reform Act, 28 U.S.C. § 1915(b)(2) (2012).

## IV.    Conclusion

In their official capacities, the defendants asserted Eleventh Amendment immunity on damages; but Mr. Walker states that he has not requested damages on the official-capacity claims. Thus, we have no need to address the defendants' Eleventh Amendment argument.

We affirm the dismissal on the conditions-of-confinement claims involving the personal capacities of defendants Hickenlooper, Ritter, Falk, Zavaras, Raemisch, Soucie, Griffith, Fuller, and Lombard. On these claims, we reverse with respect to defendants Milyard, Chapdelaine, and Doe.

We affirm the dismissal of all personal-capacity claims based on deliberate indifference to serious medical needs and denial of court access.

In light of this disposition, we remand for further proceedings on (1) the official-capacity claims for declaratory and injunctive relief and (2) the personal-capacity claims, involving conditions of confinement, against Kevin Milyard, John Chapdelaine, and Jane Doe.

With these decisions on the appeal, we grant leave to Mr. Walker to proceed in forma pauperis.

Entered for the Court

Robert E. Bacharach
Circuit Judge