FERNANDEZ, Circuit Judge,
concurring in part and dissenting in part:
I respectfully concur in part and dissent in part.
I agree with the majority that we must review the district court’s decision de novo. See Starr v. Baca, 652 F.3d 1202, 1205 (9th Cir. 2011). Moreover, I agree that we view the allegations of the complaint in the light most favorable to the plaintiff. But that does not mean that a complaint is sufficient because we can imagine a possibility that the defendant has committed some wrongdoing. Rather, “[wjhere a complaint pleads facts that are merely consistent with a defendant’s liability, it stops short of the fine between possibility and plausibility of entitlement to relief.” Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-84, 686-87, 129 S.Ct. 1937, 1949-52, 1954, 173 L.Ed.2d 868 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).
Moreover, where a plaintiff has relied upon a document, or parts thereof, courts can properly consider the whole of the document to be effectively incorporated by reference into the complaint. See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119, 1121 (9th Cir. 2002); see also Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam); Knievel v. ESPN, 393 F.3d 1068, 1076-77 (9th Cir. 2005).
As the district court determined, Park’s complaint does not cross the line and reach plausibility; it is blocked by the principles outlined above.
A. I agree that if a government officer “ ‘intimidates or harasses the witness to discourage the witness from testifying,”’ that indicates “ ‘[ujndue prosecutorial interference.’” United States v. Bohn, 622 F.3d 1129, 1138 (9th Cir. 2010); see also Earp v. Ornoski, 431 F.3d 1158, 1170-71 (9th Cir. 2005); Williams v. Woodford, 384 F.3d 567, 601-02 (9th Cir. 2004). Unnecessarily strong warnings can accomplish that. See, e.g., Webb v. Texas, 409 U.S. 95, 98, 93 S.Ct. 351, 353-54, 34 L.Ed.2d 330 (1972) (per curiam); United States v. Vavages, 151 F.3d 1185, 1190-91 (9th Cir. 1998); cf. United States v. Jaeger, 538 F.3d 1227, 1231-32 (9th Cir. 2008). Had Thompson engaged in that sort of activity, she would have acted improperly. See Ayala v. Chappell, 829 F.3d 1081, 1110-11 (9th Cir. 2016). She did not do so.
In fact, Thompson did not threaten Ayala at all, and surely did not suggest that Ayala should not testify. Of course, she did state that Gilmore was “really upset.” However, that was not because of what Ayala had said or would say, but because the defense minions had bad-mouthed him and claimed that he had committed other unsavory crimes. Gilmore was concerned *930 that their statements would cause Ayala to “lose faith in him.” One could speculate that the “really upset” language was, or was taken as, some sort of threat, but that would be speculation about a mere possibility and a rather strange reading of the whole conversation at that: By the way, even if one were persuaded by the reasoning of Smith v. Baldwin, 466 F.3d 805, 824 (9th Cir. 2006), vacated, 510 F.3d 1127, 1148-49 (9th Cir. 2007) (en banc), it is not at all “obvious” that there was intimidation or coercion by Thompson in this case.
Furthermore, Thompson told Ayala that if she received a subpoena she was “under an obligation to appear.” Moreover, when Ayala said that she did not want to hurt Gilmore, Thompson replied: “No, I understand. But — but you have to tell the truth and you’ll have to let us do our job....” None of that bespeaks an attempt to keep Ayala from testifying; quite the contrary.
I recognize that Thompson entered dangerous territory when she decided to talk to Ayala and tell her that she was not required to speak further to Park’s investigators. See Cacoperdo v. Demosthenes, 37 F.3d 504, 508-09 (9th Cir. 1994); United States v. Rich, 580 F.2d 929, 934 (9th Cir. 1978). But dangerous is not the same as forbidden.[1] Therefore, Thompson’s decision to speak with Ayala may not have been wise, but it was not disastrous.[2]
Incidentally, the complaint’s mere general pleading that there is some sort of nexus between the conversation in question and Ayala’s decision not to testify is conclusory and insufficient. See Blantz v. Cal. Dep’t of Corr. & Rehab., 727 F.3d 917, 926-27 (9th Cir. 2013); see also Iqbal, 556 U.S. at 686-87, 129 S.Ct. at 1954. That is especially true in the context of this case where, in fact, Ayala did appear at trial in response to a subpoena, and refused to testify on wholly different grounds — she, herself, was facing criminal charges and invoked her Fifth Amendment rights on that account. The district court was not required to accept the fantasy, which was based on nothing more than the complaint’s information and belief assertion, that Ayala would have blithely incriminated herself were it not for the conversation she had with Thompson. See Burrage v. United States, — U.S. -, 134 S.Ct. 881, 887-89, 187 L.Ed.2d 715 (2014) (but for causation); Blantz, 727 F.3d at 926-27 (conclusory information and belief allegations); Vavages, 151 F.3d at 1191 (but for causation).
Thus, I dissent from part 1.1 of the Discussion portion of the majority opinion.
B. Because I do not think that there was a proper allegation of a substantive violation, I also do not believe that a conspiracy was effectively alleged. See Lacey v. Maricopa County., 693 F.3d 896, 935 (9th Cir. 2012) (en banc). Furthermore, there is not even a shard of a fact to show that Thompson participated in any agreement to violate Park’s constitutional rights. Even if she had committed a violation when she *931 spoke with Ayala, there is nothing to support the claim that she conspired with others to have Ayala prosecuted on criminal charges.[3]
In addition, while the majority basically contents itself with the reflection that in general a pleading of conspiracy on information and belief is enough if defendants have the information,[4]1 do not believe that that kind of conclusory pleading can suffice here. See Blantz, 727 F.3d at 926-27; see also Twombly, 550 U.S. at 555-58, 127 S.Ct. at 1964-66. Were it otherwise, a party could evade the plausible-pleading standard by merely asserting information and belief and pointing to some parallel conduct. As it is, Thompson’s phone call was a far cry from the filing of a criminal felony complaint by another agency and prosecutor, even though they both involved Ayala.
Thus, I dissent from part II of the. Discussion portion of the majority opinion.
C. As I read the majority opinion (Discussion portion part 1.2), it seems to declare that an acquittal may or may not ultimately preclude a constitutional claim; that will depend on the facts and circumstances of the particular case.[5] If I read it aright, I do not disagree in principle with that general proposition. However, as I have already indicated, in this case the complaint does not spell out a constitutional claim in the first place. Thus, I need not and do not opine on what the result should be if Park had adequately pled that her rights had been violated by Thompson’s conversation with Ayala.
D. I agree with the majority that the issue of qualified immunity should be remanded to the district court for its consideration in the first instance. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 819-20, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982); Price v. Hawaii, 939 F.2d 702, 707 (9th Cir. 1991).
Thus, I respectfully concur in part and dissent in part.

. For example, our freeways are undoubtedly dangerous to all drivers; they are not forbidden to them.

. It should be noted that even viewed through the majority’s somewhat distorted lens, the alleged claim of substantial interference with Park’s due process rights at trial is very weak. For example, just what evidence was Park denied? Possibly, Ayala would have testified that when she baited Gilmore by accusing him of killing the murder victim, who everyone knew had been strangled, he choked her and said: "You want to see how she felt?” Although there is no justification for his reaction to her statement, it is important to recognize that he did not spontaneously choose that topic. He was reacting to Ayala's taunt. Moreover, in their unusual relationship, Ayala had, it seems, also assaulted Gilmore — hence her own prosecution.

. Those charges were hardly trumped up or false, and Ayala ultimately pled nolo contendere to a lesser offense. See Williams, 384 F.3d at 601-02.

. An interesting circular concept: I do not have evidence of an agreement, but since I say that you agreed, you must have the evidence.

. See Haupt v. Dillard, 17 F.3d 285, 287-88 (9th Cir. 1994); see also Smith v. Almada, 640 F.3d 931 (9th Cir. 2011) (majority opinion, two concurring opinions, and one dissenting opinion); Mosley v. City of Chicago, 614 F.3d 391, 397-98 (7th Cir. 2010); Kjellsen v. Mills, 517 F.3d 1232, 1238-40 (11th Cir. 2008); Morgan v. Gertz, 166 F.3d 1307, 1310 (10th Cir. 1999); McCune v. City of Grand Rapids, 842 F.2d 903, 907 (6th Cir. 1988).