IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 3, 2021 Session

## MCKAYLA TAYLOR v. MIRIAM'S PROMISE, ET AL.

Appeal from the Circuit Court for Putnam County
No. 2017 - CV - 123        Ronald Thurman, Chancellor

_____

### No. M2020-01509-COA-R3-CV

_____

This appeal involves an award of attorney fees after a remand from this Court. The appellant argues that the statute authorizing such fees is inapplicable by its terms and also unconstitutional as a violation of her right to access the courts. We affirm and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Connie Reguli, Brentwood, Tennessee, for the appellant, McKayla Taylor.

Cynthia A. Wilson, Cookeville, Tennessee, for the appellees, Cookeville Regional Medical Center and Kellye Ann Reid.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Mary Elizabeth McCullohs, Senior Assistant Attorney General, for the appellee, State of Tennessee.


**OPINION**

### I.   FACTS & PROCEDURAL HISTORY

Plaintiff McKayla Taylor filed this lawsuit against twelve defendants involved with the adoption of her child. According to the complaint, Ms. Taylor changed her mind about the adoption shortly after the birth of her child, and the child was ultimately returned to

her. However, Ms. Taylor filed this action seeking up to $50 million in damages and asserting numerous causes of action, including conspiracy to commit a fraud, tortious civil kidnapping, negligence, professional negligence, and conspiracy to commit conversion of a person.

This appeal only involves two of the twelve defendants – Kellye Reid and Cookeville Regional Medical Center ("CRMC"). The complaint alleged that Kellye Reid was a licensed social worker employed by CRMC who had Mother execute legal documents while under the influence of medication and falsely led Mother to believe that she could change her mind regarding the care and control of the child after executing the documents. The complaint alleged that the actions of Ms. Reid fell below the standard of care for a licensed social worker and were the proximate cause of injury to Ms. Taylor. It alleged that CRMC was vicariously liable for Ms. Reid's actions.[1]

All of the defendants filed motions to dismiss, asserting numerous alternative grounds for dismissal. The trial court entered a single order granting the motions of all defendants. The trial court explained that the "predicate of all the claims against all the Defendants" was that the adoption process used in this case was illegal under Tennessee law, but based on its review of Tennessee law, the trial court concluded "that is not the case." Accordingly, the trial court found that this was a basis for dismissal of the entire suit, and all of the claims against the defendants failed to state a claim upon which relief could be granted under Tennessee Rule of Civil Procedure 12.02(6). However, the trial court also made alternative rulings as to some specific claims and defendants. With respect to defendant Kellye Reid and other social workers, the trial court found that "these individually-named Defendants were not provided with pre-suit notice" in accordance with the Health Care Liability Act. Because Ms. Taylor was unable to benefit from the 120-day extension under the Act, her claims were barred by the statute of limitations. The court also found that Ms. Taylor failed to strictly comply with the certificate of good faith requirement. The court alternatively dismissed the intentional tort claims against CRMC as barred by the Governmental Tort Liability Act. It also found that the claims for conversion of a child and tortious civil kidnapping were not recognized under Tennessee law, and the fraud claims were not pled with specificity.

---

[1] Although the case was originally filed in the circuit court of Davidson County, an agreed order was entered transferring the case to Putnam County. The agreed order stated,

> [T]he Defendant, Cookeville Regional Medical Center, is a private act hospital operated by the City of Cookeville, Tennessee and established under T.C.A. § 7-57-601 to -604, the Private Act Hospital Authority Act of 1996 [] and accordingly is a governmental entity. T.C.A. § 29-20-307 and -308 provide that exclusive jurisdiction and venue for governmental tort liability actions, such as this case is as to Cookeville Regional Medical Center, are in the Circuit Court in which the governmental entity is located – in this case Putnam County, Tennessee.

Ms. Taylor appealed the trial court's order of dismissal to this Court. On appeal, this Court affirmed the dismissal of all claims on various grounds. *See Taylor v. Miriam's Promise*, No. M2017-01908-COA-R3-CV, 2019 WL 410700 (Tenn. Ct. App. Jan. 31, 2019). Ms. Taylor then filed an application for permission to appeal to the Tennessee Supreme Court. The Tennessee Supreme Court denied Ms. Taylor's application for permission to appeal but designated the opinion of the Court of Appeals as "Not for Citation" in accordance with Tennessee Supreme Court Rule 4 § E.[2]

Upon remand to the trial court, Ms. Reid filed a motion for an award of attorney fees as the prevailing party pursuant to Tennessee Code Annotated section 29-20-113 of the Governmental Tort Liability Act, which provides, in relevant part:

> (a) Notwithstanding § 20-12-119(c)(5)(A), if a claim is filed with a Tennessee or federal court, the Tennessee claims commission, board of claims, or any other judicial body established by the state or by a governmental entity of the state, against an employee of the state or of a governmental entity of the state in the person's individual capacity, and the claim arises from actions or omissions of the employee acting in an official capacity or under color of law, and that employee prevails in the proceeding as provided in this section, then the court or other judicial body on motion shall award reasonable attorneys' fees and costs incurred by the employee in defending the claim filed against the employee.
> (b) For purposes of this section, the employee shall be the prevailing party if:
> (1) The employee successfully defends the claim alleging individual liability; or
> (2) The claim of individual liability is dismissed with or without prejudice after forty-five (45) days have elapsed after an answer or other responsive pleading is filed in which the employee asserts the employee was not acting within the employee's individual capacity at the time of the matters stated in the complaint.
> (c) The inclusion of an additional claim against the employee in official

---

[2] Rule 4(E) of the Rules of the Supreme Court of the State of Tennessee provides, in part:

(E)(1) If an application for permission to appeal is hereafter denied by this Court with a "Not for Citation" designation, the opinion of the intermediate appellate court has no precedential value.
(2) An opinion so designated shall not be published in any official reporter nor cited by any judge in any trial or appellate court decision, or by any litigant in any brief, or other material presented to any court, except when the opinion is the basis for a claim of res judicata, collateral estoppel, law of the case, or to establish a split of authority, or when the opinion is relevant to a criminal, post-conviction or habeas corpus action involving the same defendant.

capacity in the same proceeding shall not preclude the employee from obtaining the remedies provided in this section that are related to the claim against the employee in individual capacity.

(d) Attorneys' fees and costs shall be paid to the state, or a governmental entity of the state, if either the state or the governmental entity represents, or retains and agrees to pay for counsel to represent, the employee sued in an individual capacity. If the state has not made such agreement, the attorneys' fees and costs shall be paid to the employee, or to counsel representing the employee. . . .

Tenn. Code Ann. § 29-20-113. Ms. Reid asserted that she was employed by a private act hospital, was sued in her individual capacity, and prevailed within the meaning of the statute because all claims against her were dismissed, with that ruling being upheld on appeal. Thus, Ms. Reid asserted that "all of the requirements of Tenn. Code Ann. § 29-20-113 have been satisfied," and she was entitled to an award of her attorney fees. She submitted an affidavit and declarations in support of her motion.

Ms. Taylor filed a response to the motion for attorney fees and challenged Tennessee Code Annotated section 29-20-113 as unconstitutional. Specifically, she argued that the statute violated her rights to equal protection and "access to the Courts." Ms. Taylor argued that the "[e]qual protection analysis requires strict scrutiny when the classification interferes with the exercise of a fundamental right," and rational basis review when it does not. She argued that the statute at issue could not meet either test. As for her claim regarding the right of access to the courts, Ms. Taylor asserted that "[t]he [United States] Supreme Court has recognized a constitutional right of access to the courts, whereby a plaintiff with a nonfrivolous legal claim has the right to bring that claim to a court of law." She quoted *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997), which states that "the right of access to the courts finds support in several provisions of the Constitution including: the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause, the First Amendment, and the Privileges and Immunities Clause of Article IV." (internal citations omitted). Ms. Taylor asserted that Tennessee Code Annotated section 29-20-113 "interfere[s] with the constitutionally protected right to access to the courts." She argued that the statute was "unconstitutional as written" and alternatively "unconstitutional as applied." She claimed that her case "was truncated in the judicial process by the Supreme Court denying the Rule 11 application for review but categorizing the Court of Appeals opinion as 'Not for Publication.'" Ms. Taylor insisted that she had demonstrated in her application for permission to appeal that the Court of Appeals opinion was contrary to the law, but the Tennessee Supreme Court "basically eras[ed] the Plaintiff's litigation from history." As an alternative to her constitutional arguments, Ms. Taylor argued that Ms. Reid failed to meet the statutory requirement of showing that she had "incurred" attorney fees, and therefore, the statute was inapplicable by its terms.

- 4 -

The State of Tennessee, through the office of the Attorney General and Reporter, filed a motion to intervene in order to defend the constitutionality of Tennessee Code Annotated section 29-20-113. The trial court granted the motion, and the State filed a memorandum in support of the constitutionality of the statute.[3] With respect to the equal protection challenge, the State asserted that strict scrutiny was inappropriate because the Tennessee Supreme Court has held that "[w]hile . . . all citizens have a constitutional right to access to courts, that right in and of itself is not a fundamental right for purposes of an equal protection analysis." *Hughes v. Tenn. Bd. of Prob. & Parole*, 514 S.W.3d 707, 720 (Tenn. 2017). The State contended that Tennessee Code Annotated section 29-20-113 survives rational basis review because when a plaintiff files a complaint against a government employee in his or her individual capacity and loses, it is reasonable to require the plaintiff to pay the costs incurred by the employee in defending the suit. The State suggested that employees performing governmental service "ought not be saddled with the expenses of litigation when they are wrongfully sued." It also contended that governmental funds should be replenished when the governmental entity pays the litigation expenses. Thus, the State argued that the statute is rationally related to the State's interests in discouraging nonmeritorious lawsuits and protecting public employees and public entities from incurring unnecessary litigation expenses. Next, the State contended that section 29-20-113 does not interfere with the right of access to the courts. The State took the position that Ms. Taylor had "baldly" asserted that the statute violated the right of access to the courts but made "no real argument in support of that assertion," such that her argument should be waived. In any event, however, the State pointed out that the statute, requiring payment of attorney fees, does not prevent a plaintiff from filing a complaint or create a frustrating condition standing between the plaintiff and the courthouse door. To the contrary, the State noted, "a plaintiff must necessarily be accessing the courts" in order for the statute to apply after the defendant has prevailed in the litigation. Thus, the State asked the court to uphold the constitutionality of the statute.

Ms. Reid filed a reply in response to the constitutional argument, along with additional supporting documents. She claimed that it was difficult to determine the extent of Ms. Taylor's constitutional arguments, so in an abundance of caution, she analyzed the statute's constitutionality on various alternative grounds. Regarding equal protection, she argued that the statute's fee shifting provision embodies the policy of the State of Tennessee that government employees who successfully defend cases filed against them in their individual capacities are entitled to an award of their attorney fees, and therefore, it passes the rational basis test. Ms. Reid characterized Ms. Taylor's access to courts argument as "confusing" but seemingly asserted as a "standalone" claim beyond her equal protection argument. Ms. Reid argued that Ms. Taylor lacked standing to challenge the

---

[3] We note that Ms. Taylor also challenged the constitutionality of Tennessee Code Annotated section 20-12-119, as other defendants relied on that statute as a basis for awarding attorney fees to them, and earlier in the proceeding, Ms. Taylor had challenged the constitutionality of the Health Care Liability Act's pre-suit notice and certificate of good faith requirements as a denial of her "right of free access to the courts." However, this appeal only involves section 29-20-113 and the award to Ms. Reid.

statute on the basis of a denial of access to the courts when she had not, in fact, been denied access to a court or unable to prosecute a claim. Ms. Taylor filed a reply, maintaining that the statute was unconstitutional but also arguing that it was void for public policy reasons. The defendants also filed an additional reply.

Thereafter, the trial court entered an order granting Ms. Reid's motion for attorney fees. The court noted Ms. Taylor's constitutional challenges to the statute but found that it did not make any classification involving a suspect or quasi-suspect class or affect a fundamental right, and the statute was rationally related to legitimate state interests and therefore constitutional. The court found that "Plaintiff alleged individual causes of action against defendant Kellye Reid ("Reid"), an employee of prevailing defendant Cookeville Regional Medical Center ("CRMC"), a governmental entity." It found that Ms. Reid prevailed in that her motion to dismiss was granted and Ms. Taylor appealed without success. After discussing factors regarding the reasonableness of the fees, the trial court awarded \$42,106.91 in attorney fees pursuant to Tennessee Code Annotated section 29-20-113. Ms. Taylor timely filed a notice of appeal.

## II. ISSUES PRESENTED

Ms. Taylor presents the following issues in her brief on appeal:

1. Whether "[t]he trial court erred in awarding attorney fees under Tenn. Code Ann. § 29-20-113 in that strict compliance with the statute must be met."
2. Whether "Tenn. Code Ann. § 29-20-113(c) is unconstitutional."

In their posture as appellees, Ms. Reid and CRMC also question whether Ms. Taylor has standing to challenge the constitutionality of Tennessee Code Annotated section 29-20-113 on the basis that it denied her access to the court.

For the following reasons, we affirm the decision of the circuit court and remand for further proceedings.

## III. DISCUSSION

### A. Applicability of the Statute

On appeal, Ms. Taylor argues that the trial court "failed to make specific findings" to show that Tennessee Code Annotated section 29-20-113 was applicable. According to Ms. Taylor,

The trial court order acknowledges that this lawsuit against the person of Kellye Reid [sic] but does not set forth sufficient findings to show that the claims against her fell within the limited parameters of Tenn. Code Ann. §

- 6 -

29-20-113 which required that the lawsuit be (a) against an employee of the state or of a <u>government entity of the state in their individual capacity</u>, (b) a claim that <u>arises from actions or omissions of the employee acting in an official capacity or under color of law</u>, and (c) <u>fees incurred by the employee</u>.

In her brief on appeal, Ms. Taylor contended that the action against Ms. Reid "was brought in her individual capacity but NOT for 'actions or omissions of the employee acting in an official capacity or under color of law,'" and she also insisted that Ms. Reid was not an employee of a government entity within the meaning of the statute. As such, Ms. Taylor argued in her brief that the statute was inapplicable to the facts of the case before us. During oral argument before this Court, however, Ms. Taylor stated that she was withdrawing her argument that Ms. Reid was not an employee of a governmental entity.

From our review of the record, the only argument that Ms. Taylor raised before the trial court regarding the applicability of the statute was whether Ms. Reid "incurred" any attorney fees within the meaning of the statute. She noted that the statute provides that the court "shall award reasonable attorneys' fees and costs incurred by the employee in defending the claim filed against the employee." Tenn. Code Ann. § 29-20-113(a). Ms. Taylor suggested that Ms. Reid could not meet this requirement because her counsel "filed joint motions, made joint court appearances, and filed joint briefs," and therefore, no fees could be awarded. However, Ms. Taylor failed to note that the statute further provides, in subsection (d), "Attorneys' fees and costs shall be paid to the state, or a governmental entity of the state, if either the state or the governmental entity represents, or retains and agrees to pay for counsel to represent, the employee sued in an individual capacity." Tenn. Code Ann. § 29-20-113(d). The trial court found that "CRMC retained counsel [] to defend Reid, its employee," and paid the attorney fees and costs incurred in the defense of Ms. Reid in the amount of $42,106.91. Thus, the trial court awarded fees to CRMC pursuant to subsection (d) of the statute. The trial court made specific findings with respect to this issue, and Ms. Taylor's argument that the statute was inapplicable under these circumstances is without merit.

Given the limited arguments Ms. Taylor raised in the trial court, we discern no merit in her argument that the trial court failed to sufficiently comply with the statute or failed to make sufficient findings regarding the applicability of the statute. To the extent that Ms. Taylor attempts to raise additional arguments on appeal regarding the applicability of the statute, we conclude that she has waived those issues by failing to raise them in the trial court. *See State v. Allen*, 593 S.W.3d 145, 154 (Tenn. 2020) ("Generally, issues raised for the first time on appeal are waived."); *Irvin v. Green Wise Homes, LLC*, No. M2019-02232-COA-R3-CV, 2021 WL 709782, at *10-11 (Tenn. Ct. App. Feb. 24, 2021) *perm. app. denied* (Tenn. June 9, 2021) (concluding that an appellant's arguments regarding the applicability of the attorney fee provision in Tennessee Code Annotated section 20-12-119 were waived when they were raised for the first time in a motion to alter or amend).

## B. *Constitutionality of the Statute*

Ms. Taylor's argument regarding the constitutionality of the statute is somewhat hard to follow, for several reasons. The issue she presented in her brief on appeal was simply whether "Tenn. Code Ann. § 29-20-113(c) is unconstitutional." However, we presume that the inclusion of subsection (c) within the issue was a typographical error because Ms. Taylor's argument has never focused on any particular language or subsection of the statute. The State's brief on appeal notes the inexplicable reference to subsection (c) within Ms. Taylor's issue, but it ultimately elected to "treat the issue as a challenge to the entire statute." We will do the same.

The argument section of Ms. Taylor's brief begins by asserting that Tennessee Code Annotated section 29-20-113 is unconstitutional as an undue burden on the right to open and free access to the courts under the Open Courts Clause found in Article I, Section 17 of the Tennessee Constitution. However, Ms. Taylor did not raise any argument in the trial court regarding this provision of the Tennessee Constitution. As such, we conclude that she has waived the argument on appeal. *See Hughes v. Tenn. Bd. of Prob. & Parole*, 514 S.W.3d 707, 724 (Tenn. 2017) (analyzing the right of access to the courts but concluding that the appellant "waived his challenge pursuant to the Open Courts Clause of the Tennessee Constitution" by failing to raise it as an issue in his application for permission to appeal and asserting it for the first time in his reply brief).

Before the trial court, Ms. Taylor challenged section 29-20-113 as violating her rights to equal protection and "access to the Courts." Her analysis of these issues made clear that she was asserting a right of access to the courts under the United States Constitution. The Tennessee Supreme Court provided a helpful explanation of the right of access to courts in *Hughes*, where the petitioner alleged a violation of his rights of access under the Due Process and Equal Protection provisions of the United States and Tennessee Constitutions:

> The right of access to courts was first recognized in *Ex parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941), when the Court struck down a provision that prohibited prisoners from filing habeas corpus petitions unless the petition was found to be "properly drawn" by an investigator from the parole board. *Id*. at 549, 61 S.Ct. 640. Since *Hull*, the United States Supreme Court has recognized that this right stems from multiple provisions of the United States Constitution. While some Courts have relied on the Privileges and Immunities Clause, U.S. CONST. art. IV, § 2, cl. 1; *Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 154, 28 S.Ct. 34, 52 L.Ed. 143 (1907) (Harlan, J., dissenting), and the First Amendment's right of petition, U.S. CONST. amend. I; *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), the analysis utilized in most access-to-courts cases

appears to be grounded in the Due Process and Equal Protection provisions of the Fourteenth Amendment, U.S. CONST. amend. XIV, § 1; *M.L.B. v. S.L.J.*, 519 U.S. 102, 120, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) (citing multiple equal protection and due process cases). Therefore, we will address petitioner's assertions utilizing due process and equal protection principles.

Generally, due process and equal protection analyses merit separate consideration. However, the United States Supreme Court has stated that in the right-of-access-to-courts analysis, the equal protection and due process principles converge. *M.L.B.*, 519 U.S. at 120, 117 S.Ct. 555 (citing *Bearden v. Georgia*, 461 U.S. 660, 665, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983)).

> The equal protection concern relates to the legitimacy of fencing out would-be appellants based solely on their inability to pay core costs. The due process concern homes in on the essential fairness of the state-ordered proceedings anterior to adverse state action. A "precise rationale" has not been composed ... because cases of this order "cannot be resolved by resort to easy slogans or pigeonhole analysis," ....

*Id.* (citations omitted); *see also Christopher v. Harbury*, 536 U.S. 403, 415 n.12, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (citing the many cases and constitutional provisions on which the Court has based the right of access to courts); *Lewis v. Casey*, 518 U.S. 343, 367, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (Thomas, J., concurring) (noting the Court's "inability ... to agree upon the constitutional source of the supposed right" of access to the courts); *Bearden*, 461 U.S. at 665-67, 103 S.Ct. 2064. As such, we will address both the due process and equal protection concerns simultaneously.

Both the United States and Tennessee Constitutions protect the right to due process of law. Section 1 of the Fourteenth Amendment to the United States Constitution provides, "No State shall make or enforce any law which ... deprive[s] any person of life, liberty, or property, without due process of law ...." Article I, section 8 of the Tennessee Constitution states, "[N]o man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers, or the law of the land." We have determined that this provision of the Tennessee Constitution is "synonymous" with the Due Process Clause of the Fourteenth Amendment. *Gallaher* [*v. Elam*, 104 S.W.3d 455, 463 (Tenn. 2003)] (citing *Riggs* [*v. Burson*, 941 S.W.2d 44, 51 (Tenn. 1997)]).

Similarly, the equal protection of the laws is also guaranteed by both the United States and Tennessee Constitutions. Section 1 of the Fourteenth Amendment to the United States Constitution provides, "No State shall make or enforce any law which shall ... deny to any person within its jurisdiction

the equal protection of the laws." There are also two provisions of the Tennessee Constitution that encompass the equal protection guarantee. Article I, section 8, which is set out above, and Article XI, section 8, which provides:

> The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie[s], or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

This Court has concluded that Article I, section 8 and Article XI, section 8 of the Tennessee Constitution provide "essentially the same protection" as the Equal Protection Clause of the United States Constitution. *Tenn. Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 152 (Tenn. 1993). Moreover, when analyzing the merit of an equal protection challenge, this Court has utilized the three levels of scrutiny—strict scrutiny, heightened scrutiny, and reduced scrutiny, which applies a rational basis test—that are employed by the United States Supreme Court depending on the right that is asserted. *State v. Tester*, 879 S.W.2d 823, 828 (Tenn. 1994) (citations omitted). "Strict scrutiny applies when the classification at issue: (1) operates to the peculiar disadvantage of a suspect class; or (2) interferes with the exercise of a fundamental right." *Gallaher*, 104 S.W.3d at 460 (citation omitted). Heightened scrutiny applies to cases of state sponsored gender discrimination. *See United States v. Virginia*, 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (quoting *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982)); *Mitchell v. Mitchell*, 594 S.W.2d 699, 701 (Tenn. 1980). Reduced scrutiny, applying a rational basis test, applies to all other equal protection inquiries and examines "whether the classifications have a reasonable relationship to a legitimate state interest." *Tenn. Small Sch. Sys.*, 851 S.W.2d at 153 (quoting *Doe v. Norris*, 751 S.W.2d 834, 841 (Tenn. 1988)).

*Hughes*, 514 S.W.3d at 711-12, 713-16 (footnotes omitted).

Here, Ms. Taylor's brief on appeal states, "The plaintiff [Ms. Taylor] raised (1) equal protection and (2) access to the court arguments in the constitutional challenge, however, the plaintiff now asserts solely the access to the Courts basis. Therefore, the arguments related to equal protection are not included in this brief." Thus, it is difficult to determine what remains of Ms. Taylor's access to courts argument. She maintains that

- 10 -

section 29-20-113 interferes with the right to access the courts and places an "unreasonable burden on good-faith litigants."

In *Christopher v. Harbury*, 536 U.S. 403, 412-13 (2002), the United States Supreme Court reviewed its prior cases on denial of access to courts along with those from the various circuits and concluded that "two categories emerge" – forward-looking and backward-looking access claims. "In the first [category] are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Id.* at 413. For example, these are often prison-litigation cases regarding law libraries, readers for illiterate prisoners, or lawyers. *Id.* This category also includes denial-of-access cases challenging filing fees that poor plaintiffs cannot afford to pay, where "the object is an order requiring waiver of a fee to open the courthouse door for desired litigation." *Id.* In forward-looking access cases, "the essence of the access claim is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs." *Id.* "The opportunity [to litigate] has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.*

The second type, backward-looking claims, are "not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." *Id.* at 413-14. The act that allegedly denied access may have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief. *Id.* at 414. "These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* "It may be the case that an underlying action has already been tried to an inadequate result due to missing or fabricated evidence in an official cover-up, or the claim may still be timely and subject to trial, but for a different remedy than the one sought under the access claim, or against different defendants." *Id.* at 416 n.13 (quotation omitted).[4]

---

[4] The Supreme Court noted that "[b]ifurcation into forward-looking and backward-looking access claims is a simplification, and not the only possible categorization, but it helps to focus the issues here." *Christopher*, 536 U.S. at 414 n.11. It also noted that all backward-looking cases "have been decided in the Courts of Appeals" and that the Court would "assume, without deciding, the correctness of the decisions." *Id.* at 414 n.9. The Court of Appeals for the Sixth Circuit has stated that "[b]ackward-looking claims are much less established than forward-looking claims, *see Sousa v. Marquez*, 702 F.3d 124, 127-28 (2d Cir. 2012) (pointedly assuming *arguendo*, instead of holding, that backward-looking claims are cognizable at all), but this Court has recognized them[.]" *Flagg v. City of Detroit*, 715 F.3d 165, 173-74 (6th Cir. 2013). The Court enumerated the elements of a backward-looking denial of access claim as: (1) a non-frivolous underlying claim, (2) obstructive actions by state actors, (3) substantial prejudice to the underlying claim that cannot be remedied by the state court, and (4) a request for relief that the plaintiff would have sought on the underlying claim and is now otherwise unattainable. *Id.* at 174.

Although the circumstances in each type of claim vary, "the ultimate justification for recognizing each kind of claim is the same." *Id.* at 414. "Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414-15. Thus, the constitutional right of access to courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. The plaintiff must therefore identify a "nonfrivolous" underlying claim, whether anticipated or lost, and "describe the official acts frustrating the litigation." *Id.*; *see also Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011) ("Essentially, a claim for denial of access to the courts has unique pleading requirements: a plaintiff must plead a case within a case, alleging the law and facts sufficient to establish both the interference with his access to the courts, and the non-frivolous nature of the claim that was lost.").

To illustrate, in *Walker v. Hickenlooper*, 627 F. App'x 710, 712 (10th Cir. 2015), an inmate filed a lawsuit against numerous state and prison officials, claiming that they had withheld information that led him to continue drinking from the city's contaminated water supply. He included a claim against a prison warden for denial of the right to access the courts, alleging that the warden tried to avoid litigation by concealing the contamination of the water supply for six years. *Id.* at 718-19. The Court of Appeals for the Tenth Circuit explained that the access claim was properly dismissed because the inmate "was eventually able to prosecute his claim[.]" *Id.* at 719. The Court noted that, despite the delay, he "was ultimately able to litigate the underlying claim through this suit." *Id.* Under those circumstances, the prisoner was not asserting a forward-looking claim (seeking to remove an existing obstacle to litigation) or a backward-looking access claim (alleging that a suit ended poorly or was precluded because of a state actor's misconduct). *Id.* In short, he was able to sue the wrongdoers and did "not supply any reason to believe he [was] less likely to succeed because of" the warden's actions. *Id.* "The absence of such an allegation [was] fatal," and the court-access claim was properly dismissed. *Id.*; *see also Gerber v. Herskovitz*, 14 F.4th 500, 512 (6th Cir. 2021) ("The congregants' invocation of cases about the right to access the courts does not help because they have not shown that their lack of access to this information hindered [their] efforts to pursue a legal claim.") (quotation omitted).

Ms. Taylor does not acknowledge the two categories of access claims or make any attempt to characterize her claim as one type or the other. She simply alleges that section 29-20-113's provision for an award of attorney fees interferes with the constitutionally protected right to access the courts and burdens good faith litigants. She asserts that a plaintiff with a nonfrivolous legal claim has "the right to bring that claim to a court of law." (quoting *Flagg*, 715 F.3d at 173). However, Ms. Taylor has not demonstrated that section 29-20-113, as written or as applied, violates the constitutional right of access to the courts.[5]

---

[5] Ms. Reid and CRMC argue that Ms. Taylor lacks standing to assert a violation of her right to

- 12 -

Because Ms. Taylor raises her argument as a challenge to the constitutionality of a statute, we must bear in mind that "[w]e are 'charged with upholding the constitutionality of statutes where possible'" and begin with the presumption that the statute is constitutional. *Hughes*, 514 S.W.3d at 712 (quoting *State v. Pickett*, 211 S.W.3d 696, 700 (Tenn. 2007)). "'This presumption applies with even greater force when, as here, the facial constitutional validity of a statute is challenged.'" *McClay v. Airport Mgmt. Servs., LLC*, 596 S.W.3d 686, 689 (Tenn. 2020) (quoting *State v. Decosimo*, 555 S.W.3d 494, 506 (Tenn. 2018)).

In *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145, 1146-47 (Fla. 1985), the Florida Supreme Court considered whether a Florida statute providing for attorney fees to be awarded to the prevailing party in medical malpractice cases violated the due process and equal protection clauses of the Florida and United States Constitutions and the access to courts provision of the Florida Constitution by "chilling" litigation that would otherwise be instituted by victims of medical malpractice. The Court explained:

> Statutes authorizing courts to award attorney fees to prevailing litigants have long withstood constitutional attack. *See, e.g., Hunter v. Flowers*, 43 So.2d 435 (Fla. 1949) (upholding statute authorizing the recovery of attorney fee by a successful claimant enforcing a laborer's lien). The question of whether such provisions violate the due process and equal protection clauses of the fourteenth amendment to the United States Constitution was specifically addressed by Justice Cardozo in *Life and Casualty Insurance Co. v. McCray*, 291 U.S. 566, 569, 54 S.Ct. 482, 483, 78 L.Ed. 987 (1934), in which he said:
>
> > We assume in accordance with the assumption of the court below that payment was resisted in good faith and upon reasonable grounds. Even so, the unsuccessful defendant must pay the adversary's costs, and costs in the discretion of the lawmakers may include the fees of an attorney. *There are*

---

access the court "because, in fact, she has not been denied access to court." They argue that she has not suffered an injury because she cannot meet either prong "of a denial of access claim." Because their argument on standing overlaps with the merits of an access to courts claim, we will consider the issue on the merits rather than as one of standing. *See, e.g.*, *Payne v. Nebraska Dep't of Corr. Servs.*, 288 Neb. 330, 334 (2014) ("Although the U.S. Supreme Court's majority opinion in *Lewis v. Casey* frames the issue of actual injury as a standing issue, an actual injury is also required to be successful on the merits. Therefore, we will not address standing, but, rather, we will address whether Payne demonstrated an actual injury sufficient to constitute a violation of his constitutional right to access the courts."); *Jones v. Van Lanen*, No. 20-1383, --- F.4th ----, 2022 WL 663417, at *5 (7th Cir. Mar. 7, 2022) ("[D]rawing upon the Supreme Court's analysis in *Lewis v. Casey* [], we have referred to this second element [requiring official acts frustrating the litigation] along the lines of the injury component of standing doctrine. Whether viewed as a matter of standing or merits—a question of some complexity—we end up at the same point.") (quotation omitted).

- 13 -

*systems of procedure neither arbitrary nor unenlightened, and*
*of a stock akin to ours, in which submission to such a burden*
*is the normal lot of the defeated litigant, whether plaintiff or*
*defendant. The taxing master in the English courts may allow*
*the charges of the barrister as well as the fees of the solicitor.*
*Nothing in the Fourteenth Amendment forbids a like procedure*
*here.*

(Emphasis added; footnote omitted.)

. . . The statute may encourage an initiating party to consider carefully the likelihood of success before bringing an action, and similarly encourage a defendant to evaluate the same factor in determining how to proceed once an action is filed. We reject the argument that section 768.56 so deters the pursuit of medical malpractice claims that it effectively denies access to the courts to either party in malpractice actions. We find that an award of attorney fees to the prevailing party is "a matter of substantive law properly under the aegis of the legislature," in accordance with the long-standing American Rule adopted by this Court. *See Whitten v. Progressive Casualty Insurance Co.*, 410 So.2d 501, 504 (Fla. 1982). *See also Campbell v. Maze*, 339 So.2d 202 (Fla. 1976); *Codomo v. Emanuel*, 91 So.2d 653 (Fla. 1956). . . .

*Id.* at 1148-49.

More recently, in *Spees v. Kentucky Legal Aid*, 274 S.W.3d 447, 449 (Ky. 2009), the Supreme Court of Kentucky considered whether requiring an indigent litigant to pay a certain type of attorney fees in a divorce case violated "her constitutional due process right of access to the courts under *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) and *Francis v. Taylor*, 593 S.W.2d 514 (Ky. 1980)."[6] The Court explained,

Appellee relies upon the decision of the United States Supreme Court in *Boddie*, *supra*, and our decision in *Francis*, *supra*, as support for her claim that an assessment of costs, including a warning order attorney fee, against her as an indigent person, violates her right of access to the courts. Both *Boddie* and *Francis*, like the instant case, were divorce cases involving poor persons. In *Boddie*, a litigant challenged a state procedure that required the payment of court costs at the initiation of a case as a condition precedent to

---

[6] The Kentucky Rules of Civil Procedure provide for the appointment of a "warning order attorney" who "must make diligent efforts to inform the defendant, by mail, concerning the pendency and nature of the action against him, and must report the result of his efforts to the court within 50 days after his appointment." Ky. R. Civ. P. 4.07.

adjudicating the cause, *Id.* at 372, 91 S.Ct. 780. In *Francis*, a trial judge held the adjudication of a divorce in abeyance until an indigent litigant paid the warning order attorney fee. *Id.* at 515. Both cases stand as authority that the inability to pay a fee may not bar the adjudication of a claim or prevent the initiation of a claim. *Boddie*, 401 U.S. at 381, 91 S.Ct. 780; *Francis*, 593 S.W.2d at 516. The critical distinction between the instant case and *Boddie* and *Francis* is that Appellee has never been denied access to the court, nor has the adjudication of her divorce case been impeded or impaired by a demand for payment of fees. Appellant did not demand, and the court did not require, any payment of fees from Appellee before processing her case to its conclusion. She has at no time suffered a deprivation of a constitutional right of access to the court, and thus she has no constitutional claim. *Francis*, does not hold that a poor person is exempt from paying a warning order attorney fee. It simply holds that non-payment of the fee cannot result in an abatement of the case. *Id.* at 516. The Court of Appeals erred when it concluded otherwise.

*Id.* at 449-50.

Other courts have also rejected the notion that attorney fee awards violate rights of access to the courts (as those rights exist under various sources, including state constitutions). *See, e.g.*, *Farmland Indus., Inc. v. Frazier-Parrott Commodities*, 111 F.3d 588, 590-91 (8th Cir. 1997) ("Granting an award of attorneys' fees to a successful party does not prevent any party from asserting its rights in court. Such an award does not bar the door to the courthouse, but simply makes the losing party's trip to the courthouse more expensive."); *Aron v. Becker*, No. 3:13-CV-0883, 2014 WL 5816996, at *3 (N.D.N.Y. Nov. 10, 2014) ("A plaintiff's right to access the courts is not infringed by an award of attorney's fees; it is only the financial burden of that exercise that is shifted when a plaintiff exercises that right by bringing frivolous, unreasonable, and/or baseless claims."); *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 364-66 (2004) (rejecting the argument that a statute's mandatory award of attorney fees violated the plaintiff's constitutional "right to petition and access courts," noting that "the mandatory fee-shifting provision of section 425.16(c) does not bar Bernardo or any other plaintiff from bringing a meritorious claim"); *State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So.2d 1067, 1077 (Fla. 2006) ("[F]ee-shifting statutes generally do not deny access to courts."); *U.S. Sec. Ins. Co. v. Cahuasqui*, 760 So.2d 1101, 1106-07 (Fla. Ct. App. 2000) ("[I]t is well-settled that attorney's fees provisions, which place a 'price tag' on unsuccessful claims, do not violate the right of access to the courts."); *Smith v. Baptiste*, 694 S.E.2d 83, 87 (Ga. 2010) ("[The challenged statute] does not deny litigants access to the courts, but simply sets forth certain circumstances under which attorney's fees may be recoverable."); *Hanninen v. Koch*, 868 N.E.2d 1137, 1139 (Ind. Ct. App. 2007) ("[T]he possibility of paying up to $1,000 in attorney's fees after rejecting a more favorable offer than what was awarded at trial is not an impediment to a party's access to courts. . . . [It] does not prevent

- 15 -

a party from obtaining a judicial resolution of a case nor does it obstruct a party's access to the courts.") (quotation omitted); *Vander Boegh v. Bank of Oklahoma, N.A.*, No. 2016-CA-001307-MR, 2019 WL 1495712, at \*8 (Ky. Ct. App. Apr. 5, 2019) ("[T]he trial court did not restrict the Vander Boeghs' access to the courts. They have not shown how they were prevented from raising their claims—indeed, the trial court addressed each of their counterclaims. We reject any contention that, pursuant to an agreement, awarding attorney fees to a victorious litigant after the conclusion of a protracted and bitterly fought case violates the losing litigant's right to access the courts."); *Town of Nottingham v. Newman*, 147 N.H. 131, 135 (2001) ("The defendants have not been denied access to the court. The injury of which they now complain, the imposition of civil penalties and attorney's fees, came about only as the result of a hearing in the superior court."); *Gensetix, Inc. v. Baylor Coll. of Med.*, 616 S.W.3d 630, 648-50 (Tex. Ct. App. 2020) (rejecting the argument that a mandatory fee-shifting statute violated the right of access to the courts, as such fee awards "do not create an impermissible pay-to-play barrier to the courts; the awards shift litigation costs after resolution of a claim").[7]

Keeping these principles in mind, we likewise conclude that the attorney fee provision of Tennessee Code Annotated section 29-20-113, on its face, is not unconstitutional as a violation of the right of access to courts. The access claim does not assert "a litigating opportunity yet to be gained or an opportunity already lost," nor is there an underlying cause of action the vindication of which is prevented by the denial of access to the courts. *Christopher*, 536 at 414-15. We further conclude that Ms. Taylor has failed to demonstrate that the statute is unconstitutional as applied in this case. "'In contrast to a facial challenge, which involves the constitutionality of the statute as written, [a]n 'as applied' challenge to the constitutionality of a statute is evaluated considering how it operates in practice against the particular litigant and under the facts of the instant case[.]" *Hughes*, 514 S.W.3d at 712 (quoting *State v. Crank*, 468 S.W.3d 15, 24 n.5 (Tenn. 2015)). The analysis is limited to how application of the statute "affects the petitioner specifically." *Id.* Notably, Ms. Taylor does not raise any argument to the effect that she is financially unable to pay the award of attorney fees such that the statute is allegedly unconstitutional as applied to her. Instead, her "as-applied" argument centers on the Tennessee Supreme Court's designation of the previous decision of the Court of Appeals as "Not for Citation." Ms. Taylor suggests that the "the opinion was erased from history." Thus, she claims that she was "shut out of court" and "denied her ability to fully adjudicate her claims[.]"

At the outset, we note that despite the Supreme Court's designation of the opinion of this Court as "Not for Citation," the Supreme Court nonetheless denied Ms. Taylor's application for permission to appeal. The Court of Appeals opinion is still controlling

---

[7] In *T.A. Enterprises, Inc. v. Olarte, Inc.*, 931 So. 2d 1016, 1017 (Fla. Dist. Ct. App. 2006), the Court found that a statute authorizing a court to "condition appellate review" upon payment by a manufacturer of the consumer's attorney fees did violate the state constitution. However, this case does not involve such a rule.

among the parties to this case for purposes of the law of the case. *See* Tenn. Sup. Ct. R. 4(E). It was not erased from history. In *Adkins v. Adkins*, No. M2021-00384-COA-T10B-CV, 2021 WL 2882491, at *16 (Tenn. Ct. App. July 9, 2021), we explained that the Tennessee Supreme Court's designation of an opinion in a previous appeal as "Not for Citation" meant "that the opinion has 'no precedential value'" and "may not be cited in support of arguments in other cases," but it remains "part of the history of the instant case and so may be cited in **this** case for referential purposes, i.e., explanation of the case history and previous rulings." *See also Willeford v. Klepper*, 597 S.W.3d 454, 464 n.7 (Tenn. 2020) ("Although this Court designated the Dean-Hayslett opinion as "Not For Citation," we discuss it to provide background to legislation pertinent to this appeal."); *Daly v. Daly*, No. W2017-02549-COA-R3-CV, 2020 WL 2731239, at *1 n.1 (Tenn. Ct. App. May 26, 2020) *perm. app. denied* (Tenn. Oct. 12, 2020) ("*Daly II* was designated as not for citation. Accordingly, this opinion will only be cited as applicable to matters concerning this appeal involving the same parties.").

Furthermore, Ms. Taylor has not been "shut out of court." As noted in the brief filed by Ms. Reid and CRMC, "[Ms. Taylor] has unsuccessfully litigated her underlying claims all the way to the Tennessee Supreme Court." The award of attorney fees was made after Ms. Taylor's appeals were unsuccessful. Moreover, any complaint Ms. Taylor may have regarding the designation of the Court of Appeals opinion does not mean that the statute at issue, Tennessee Code Annotated section 29-20-113, is unconstitutional as applied in this case as a violation of the right to access the court. We discern no merit in her "as-applied" argument.

### C.    *Other Issues*

Ms. Taylor alternatively argues on appeal that the statute is void as against public policy. We deem this public policy issue waived for failure to designate it is an issue for review on appeal. *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) ("[A]n issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4)."). Any remaining issues are pretermitted.

### IV.   CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed and remanded. Costs of this appeal are taxed to the appellant, McKayla Taylor, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE